UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| MARY MCMULLEN ROSS, ) | CASE NO. 15-63991-jrs |
| ) | |
| Debtor. ) | |
| _____) | |
| TORRANCE CHOATES, ) | |
| Movant, ) | CONTESTED MATTER |
| ) | |
| vs. ) | |
| ) | |
| MARY MCMULLEN ROSS, Debtor ) | |
| and NANCY J. WHALEY, Trustee, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **TORRANCE CHOATES** has filed a Motion for Relief from Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Stay in Courtroom 1404, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia, at 9:15 A.M. on September 15, 2015.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant

consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: September 4, 2015

                Respectfully submitted,

                /s/ Shannon D. Sneed
                Shannon D. Sneed, Bar No. 665610
                SHANNON D. SNEED & ASSOCIATES, P.C.
                P.O. Box 1245
                2112 Lee Street
                Covington, Georgia 30015
                (770) 788-0011 *Telephone*
                (770) 788-1702*facsimile*
                bankruptcy@sneedlaw.net
                *Attorneys for TORRANCE CHOATES*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| MARY MCMULLEN ROSS, | CASE NO. 15-63991-jrs |
| Debtor. | |
| TORRANCE CHOATES, Movant, | CONTESTED MATTER |
| vs. | |
| MARY MCMULLEN ROSS, Debtor and NANCY J. WHALEY, Trustee, | |
| Respondents. | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.

This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to proceed with an eviction against the Debtor pursuant to her violation of a residential lease agreement between the parties.

2.

Movant is the owner of certain real property located at 2716 Kristen Court NW, Conyers, GA 30012, which he leased to the Debtor on April 1, 2015. A copy of the lease is attached hereto as Exhibit "A" and made a part hereof.

3.

Debtor filed the instant case on July 27, 2015. Debtor has defaulted on rental payments which have come due since the bankruptcy filing. Debtor's prepetition arrearage is $1200.00. Debtor's post-petition arrearage is $2400.00.

5.

Because of the Debtor's post-petition default on payment of rent, Movant is not adequately protected and should be permitted to proceed with the eviction process. Movant has suffered and continues to suffer irreparable harm because of the Debtor's default.

6.

Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

**WHEREFORE,** Movant prays for an Order lifting the automatic stay, and authorizing them to proceed with the exercise of their right of eviction after default under the residential lease agreement and appropriate state statutes. Movant also prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived, so that any Order entered will be enforceable immediately upon entry, for reasonable attorney's fees, and for such other and further relief as is just and equitable.

Dated: September 4, 2015

                            Respectfully submitted,

                            /s/ Shannon D. Sneed
                            Shannon D. Sneed, Bar No. 665610
                            SHANNON D. SNEED & ASSOCIATES, P.C.
                            P.O. Box 1245
                            2112 Lee Street

Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for TORRANCE CHOATES*

## RESIDENTIAL LEASE/RENTAL AGREEMENT

This agreement made this **31st** day of (mo.) **April** (yr.) **2015**, is between **Torrance Chootes** (hereinafter called Management) and **Mary Ross** (hereinafter called Resident). Management leases to Resident, and Resident rents from Management, residential unit located at **2716 Kristen Ct.** (hereafter called premises), under the following conditions:

**TERM:**
1. The initial term of this lease shall be **1 Year**, beginning (mo./day) **4/1** (yr.) **2015** and ending Noon, (mo./day) **4/1/15** (yr.) **2016**.

**POSSESSION:**
2. If there is a delay in delivery of possession by Management, rent shall be abated on a daily basis until possession is granted. If possession is not granted within seven (7) days after the beginning day of initial term, then Resident may void this agreement and have full refund of any deposit. Management shall not be liable for damages for delay in possession.

**RENT:**
3. Rent is payable monthly, in advance, at a rate of **$1,200.00** dollars ($_____), per month, during the term of this agreement on the first day of each month at the office of Management or at such other place Management may designate. Tenant agrees to pay $20 for each dishonored check.

**RENT DISCOUNT:**
4. Time is of the essence of this agreement. If the rent is accepted before the close of the business day, on the 4th of each month the rate will be **$1,225.00** dollars ($_____), any returned check will be considered as unpaid rent and not subject to discount. **$10.00 each additional day up to the 10th. On the 5th day a dispossessory/eviction/dispossessory will be filed.**

**EVICTION:**
5. If the rent call for in paragraph 3 hereof has not been paid by the fifteenth (15th) of the month, then Management shall automatically and immediately have the right to take out a Dispossessory Warrant and have Resident, his/her family and possessions evicted from the premises. **Rent must be paid on time!, Each month and you are not allowed to fall a month behind**

**INDEMNIFICATION DEPOSIT:**
6. Management acknowledges receipt of _____ dollars ($_____), as a deposit to indemnify owner against damage to the property and for Resident's fulfillment of the conditions of this agreement. Deposit will be returned to Resident less a $50 carpet cleaning charge, thirty (30) days after the residence is vacated if:
   (a) Lease term has expired or agreement has been terminated by both parties; and
   (b) All monies due Management by Resident have been paid; and
   (c) Residence is not damaged and is left in its original condition, normal wear and tear expected, and
   (d) Management is in receipt of copy of paid final bills on all utilities (includes gas, electric, water, garbage, and telephone).
   (e) Deposit will not be returned if Resident leaves before lease time is completed. Deposit may be applied by Management to satisfy all or part of Resident's obligations and such act shall not prevent Management from claiming damages in excess of the deposit. Resident may not apply the deposit to any of the rent payment.

**RENEWAL TERM:**
7. It is the intent of both parties that this lease is for a period of **12** months and that the last month's rent will apply only to the last month of the lease period. Should this lease be breached by the Resident, both the last month's rent and the indemnification deposit shall be forfeited as liquidated damages and the Resident will owe rent through the last day of occupancy.

**SUBLET:**
8. Resident may not sublet residence or assign this lease without written consent of Management.

**CREDIT APPLICATION:**
9. Management having received and reviewed a credit application filled out by Resident, and Management having relied upon the representations and statements made therein as being true and correct, has agreed to enter into this rental agreement with Resident. Resident and Management agree the credit application the Resident filled out when making application to rent said residence is hereby incorporated by reference and made a part of this rental agreement. Resident further agrees if he/she has falsified any statement on said application, Management has the right to terminate rental agreement immediately, and further agrees Management shall be entitled to keep any security deposit and any prepaid rent as liquidated damages. Resident further agrees, in event Management exercises its option to terminate rental agreement, Resident will remove him or herself, his/her family, and possessions from the premises within 24 hours of notification from Management of the termination of his lease. Resident further agrees to indeminify Management for any damages to property of Management including, but limited to, the cost of making residence suitable for renting to another Resident, and waives any right of "set off" for the security deposit and prepaid rent which was forfeited as liquidated damages.

**FIRE AND CASUALTY:**
10. If residence becomes uninhabitable by reason of fire, explosion, or by other casualty, Management may, at its option, terminate rental agreement or repair damages within 30 days. If Management does not do repairs within this time or if building is fully destroyed, the rental agreement hereby created is terminated. If Management elects to repair damage, rent shall be abated and prorated from the date of the fire, explosion, or other casualty to the date of reoccupancy, providing during repairs, Resident has vacated and removed Resident's possessions as required by Management. The date of reoccupancy shall be the date of notice that residence is ready for reoccupancy.

**HOLD OVER:**
11. Resident shall deliver possession of residence in good order and repair to Management upon termination or expiration of this agreement.

**RIGHT OF ACCESS:**
12. Management shall have the right of access to residence for inspection and repair or maintenance during reasonable hours. In case of emergency, Management may enter at any time to protect life and prevent damage to the property.

**USE:**
13. Residence shall be used for residential purposes only and shall be occupied only by the persons named in Resident's application to lease. The presence of an individual residing on the premises who is not a signator on the rental agreement will be sufficient grounds for termination of this agreement. Residence shall be used so as to comply with state, county, and municipal laws and ordinances. Resident shall not use residence or permit it to be used for any disorderly or unlawful purpose or in any manner so as to interfere with other Resident's quiet enjoyment of their residence.

**PROPERTY LOSS:**
14. Management shall not be liable for damage to Resident's property for any type for any reason or cause whatsoever, except where such is due to Management's gross negligence. Resident acknowledges that he/she is aware that he/she is responsible for obtaining any desired insurance for fire, theft, liability, etc. on personal possessions, family, and guests.

**INDEMNIFICATION:** 16. Resident releases Management from liability for and agrees to indemnify Management against losses, incurred by Management as a result of (a) Resident's failure to fulfill any condition of this agreement; (b) any damage or injury happening in or about residence or premises to Resident's invitees or licensees or such person's property; (c) Resident's failure to comply with any requirements imposed by any governmental authority; and (d) any judgement, lien, or other encumbrance filed against residence as a result of Resident's action.

**FAILURE OF MANAGEMENT TO ACT:** 17. Failure of Management to insist upon compliance with the terms of this agreement shall not constitute a waiver of any violation.

**REMEDIES CUMULATIVE:** 18. All remedies under this agreement or by law or equity shall be cumulative. If a suit for any breach of this agreement establishes a breach by Resident shall pay to Management all expenses incurred in connection therewith.

**NOTICES:** 19. Any notice required by this agreement shall be in writing and shall be delivered personally or mailed by registered or certified mail.

**REPAIRS:** 20. Management will make necessary repairs to the exterior with reasonable promptness after receipt of written notice from Resident. Resident shall make all necessary repairs to interior and keep premises in a safe, clean, and sanitary condition. Resident shall make contact with all repair or service people and will be responsible for paying the first $25 of any charge. Resident may not remodel or paint or structurally change, nor remove any fixture therefrom without written permission from Management.

**ABANDONMENT:** 21. If Resident removes or attempts to remove property from the premises other than in the usual course of continuing occupancy, without having first paid Management all monies due, residence may be considered abandoned, and Management shall have the right without notice, to store or dispose of any property remaining on the premises by Resident. Management shall also have the right to store or dispose of any of Resident's property remaining on the premises after the termination of this agreement. Any such property shall be considered Management's property and the title thereto shall vest in Management.

**MORTGAGEE'S RIGHTS:** 22. Resident's rights under this lease shall at all times be automatically junior and subject to any deed to secure debt which is now or shall hereafter be placed on premises of which residence is part; if requested, Resident shall execute promptly any certificate that Management may request to specifically implement the subordination of this paragraph.

**RULES AND REGULATIONS:** 23. (a) Signs: Resident shall not display any signs, exterior lights, or markings. No awnings or other projections shall be attached to the outside of the building.
(b) Locks: Resident is prohibited from adding locks to, changing, or in any way altering locks installed on the doors. All keys must be returned to Management of the premises upon termination of the occupancy.
(c) Entrances, walks, lawns, and driveways shall not be obstructed or used for any purpose other than ingress and egress.
(d) Radio or television aerials shall not be placed or erected on the roof or exterior.
(e) Parking: Non-operative vehicles are not permitted on premises. Any such non-operative vehicle may be removed by Management at the expense of Resident owning same, for storage or public or private sale, at Management's option, and Resident owning same shall have no right of recourse against Management therefor.
(f) Storage: No goods or materials of any kind or description which are combustible or would increase fire risk or shall in any way increase the fire insurance rate with respect to the premises or any law or regulation, may be taken or placed in a storage area or the residence itself. Storage in all such areas shall be at Resident's risk and Management shall not be responsible for any loss or damage.
(g) Walls: no nails, screws, or adhesive hangers except standard picture hooks, shade brackets, and curtain rod brackets may be placed in walls, woodwork, or any part of residence.
(h) Guest: Resident shall be responsible and liable for the conduct of his/her guests. Act of guests in violation of this agreement or Management's rules and regulation may be deemed by Management to be a breach by Resident. No guest may stay longer than 10 days without permission of Management: otherwise a $10 per day guest charge will be due Management.
(i) Noise: All radios, television sets, phonographs, etc. must be turned down to a level of sound that does not annoy or interfere with neighbors.
(j) Resident shall maintain his/her own yard and shrubbery and furnish his/her own garbage can.
(k) Resident's Guide: Management reserves the right at any time to prescribe such additional rules and make such changes to the rules and regulations set forth and referred to above, as Management shall, in its judgement, determine to be necessary for the safety, care, and cleanliness of the premises, for the preservation of good order or for the comfort or benefit of Residents generally.

**ENTIRE AGREEMENT:** 24. This agreement and any attached addendum constitute the entire agreement between the parties and no oral statements shall be binding. It is the intention of the parties herein that if any part of this rental agreement is invalid, for any reason, such invalidity shall not void the remainder of the rental agreement.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person the day and year first above written.

_____       _____
MANAGEMENT                                              RESIDENT(S)

NUMBER OF RESIDENTS LIVING WITHIN THE PREMISES: 5

PEI 23b

## Certificate of Service

I certify that I am over the age of 18 and that on the date written below a copy of the foregoing Motion for Relief from the Automatic Stay and Notice of Hearing was served by email or by first class U.S. Mail, with adequate postage prepaid on the following persons or entities at the addresses stated:

The following parties have been served via U.S. Mail:

Mary McMullen Ross
2716 Kristen Court NW
Conyers, GA 30012

Craig Z. Black
The Semrad Law Firm LLC
101 Marietta St. NW
Atlanta, GA 30303

Nancy J. Whaley
Chapter 13 Trustee
Suite 120
303 Peachtree Center Avenue
Atlanta, GA 30303

Dated: September 4, 2015

/s/ Shannon D. Sneed
Shannon D. Sneed, Bar No. 665610
SHANNON D. SNEED & ASSOCIATES, P.C.
P.O. Box 1245
2112 Lee Street
Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for TORRANCE CHOATES*